SUSAN T. LOID, ADMINISTRATRIX, &c., OF WILLIAM H. LOID, DECEASED, DEFENDANT IN ERROR, v. THE J. S. ROGERS COMPANY, PLAINTIFF IN ERROR.

Argued November 20, 1902—Decided March 2, 1903.

1. The plaintiff's intestate, while engaged with others of the defendant's employes, under the direction of a foreman, in lifting and pushing by hand a tall and unwieldy derrick into an upright position to be ready for hoisting materials into a building, was thrown from the building and killed by the sudden falling of the derrick. At the trial of the plaintiff's suit against the master for damages resulting from the death of the intestate, based upon the alleged negligence of the master towards the intestate, there was no evidence introduced by the plaintiff from which the jury could lawfully infer such negligence. But under the evidence of the defendant, the plaintiff's case was somewhat strengthened on that subject, although not sufficiently to justify the instructions given to the jury by the trial judge who charged that the liability of the defendant turned upon the question whether or not the plank upon which the machine stood contained nails for the prevention of its slipping, and that if not then their verdict should be for the plaintiff; and thereupon refused to charge certain of the defendant's requests to the effect that the jury could find under the evidence that the deceased, in the handling of the derrick, assumed an obvious risk for the consequences of which the defendant was not legally chargeable. *Held,* that in refusing such requests the trial court erred.

2. No legal duty of the master towards the servant has ever, judici-
ally, been substituted for the exercise of ordinary prudence by
the latter.    The legislature has not, nor have our courts, by
judicial construction, enlarged the range of legal responsibility
of the master to that of a general insurer of the safety of the
servant against accidents happening to him in the performance of
his duties.

On error to the Supreme Court.

Action by Susan T. Loid, administratrix, &c., of William H.
Loid, deceased, against the J. S. Rogers Company.    Judgment
for plaintiff, and defendant brings error.

For the plaintiff in error, *Edward A. Armstrong.*

For the defendant in error, *John W. Wescott* and *Jacob T.
Hendrickson.*

The opinion of the court was delivered by

VREDENBURGH, J.    A tall wooden appliance, called a "two-
legged derrick," intended for hoisting heavy materials from
the ground up to the third story of a building in the course of
erection, while being lifted, pushed or pulled by hand by the
intestate, Loid, and other employes of the defendant into an
upright position, so as to be ready for use, lost its centre of
gravity, toppled over, and fell down from the building.    In
falling it dragged with it an attached coil of rope, which
caught around the intestate's foot, throwing him down from
the building and causing his death.    In a suit brought under
the statute in the Supreme Court by Loid's administratrix
against the defendant for compensatory damages the declara-
tion averred that the defendant negligently failed to properly
secure and fasten the feet or ends of the frame of the derrick,
and negligently failed to notify the intestate that the derrick
would, when used, slip and fall, and negligently directed the
intestate to use, and aid in using, the derrick while in the
condition aforesaid.    The case was tried before the Burlington
Circuit, and the plaintiff obtained a verdict for substantial
damages, and to review the judgment thereon entered the de-

fendant brings error. The plaintiff's proofs showed that this derrick was constructed of two poles or legs, fastened together at the top, about twenty feet long and extending apart about twelve feet wide at the bottom, with cross-bars, about five feet above their ends, holding the legs together. The two ends of these legs rested, but were not fastened, upon a single plank, which was about twelve feet long by twelve inches wide and three inches thick. There were cleats or boxes nailed on the plank, within which the ends of the legs fitted, and which were intended to prevent these ends from slipping upon the plank. Two long guy lines, or ropes, were fastened to the top, one of which reached back and was tied to the floor joists below, and the other extended out over the wall toward the ground. The plaintiff proved that the derrick had been moved from a lower part of the building up to the third floor, but had not been yet placed in a position ready for use. One of the foremen, thinking that it leaned over too far, and desiring to have it righted, called about six or eight workmen, including the intestate, to do it. Morton, the principal witness for the plaintiff, tells what thereupon happened, viz. : "We all went back in a hurry, and then it was leaning too far, and we went to raise it, and it slipped from the bottom and let the thing go over; * * * we all hands got hold of this machine to try to raise it up; * * * tried to push it back to straighten it up; * * * we all hands got under it and tried to push it back and hoist it up." This force must have caused the derrick to fall—to use again the witness' words—"just as though both legs were lifted out of the cleats, as though, in the raising of it, you had raised both legs above the cleats and it went over." Whether this derrick lost its perpendicular and fell because its feet were lifted too high by the workmen out of the cleats on the plank in which they stood, or because the whole plank at the base slipped out from its position as the result of the force used by the workmen, is a subject of doubt under the evidence. At the close of the plaintiff's case the defendant's counsel unsuccessfully moved the court for a nonsuit, based upon grounds of the want of proof showing any negligence on the part of the defendant, as well as that the proofs demonstrated

contributory negligence by the deceased. If the defendant, upon being denied this motion, had then rested his proofs, his right to the direction, by the court below, of a verdict in his favor would have been entirely clear.. No negligence imputable to the defendant had yet appeared. The defendant had, so far as the plaintiff's case had shown, furnished his employes with a properly constructed machine. There was no evidence as yet of the slightest defect in its construction, either latent or otherwise. The plaintiff had not established the averments in his declaration that the defendant had "negligently failed to properly secure and fasten the feet or ends of the frame of the derrick." On the contrary, it had appeared that the *proper* construction of this derrick required the feet to rest unfastened upon the supporting plank. The plaintiff's testimony had further shown that, in the effort to straighten the appliance by the intestate and those with him, instead of making use of the guy ropes from the top (or other proper and safe means) to pull it and move it into a vertical position by force exerted at its top, they had hurriedly applied force at its base, resulting in its fall. Under the facts so far presented it was palpably plain that but a slight degree of care in method and less haste in execution would have avoided the catastrophe. Even conceding that the injury happened to the intestate in the actual use of the derrick, the decision of this court, in the case of *McLaughlin.* v. *Camden Iron Works,* 31 *Vroom* 557, is convincing authority against the liability of the master for the consequences of precisely such accidents. In the latter case some employes, during the erection of a building, attempted to raise by hand a large wooden frame, and in hoisting it the plaintiff, an employe, was injured by its falling through lack of fastening, and this court held, in affirming the nonsuit of plaintiff ordered below, that the master was not responsible for the injury. The court, in its opinion, used the following pointed language: "The plaintiff knew that the frame was being raised by hand under the direction of the foreman, and he assumed such resultant risk of that method of doing the work as was *obvious* to him." The general governing principle, collected from various text-writers and decisions, was there stated as follows: "Where appliances for

work are needed the duty is on the master to use reasonable care in their selection, and he cannot escape it by delegation; but carelessness in their *use,* or failure to use them, on the part of his servant, whereby injury is received by a fellow-servant in the same common employment, is not chargeable to the master, no matter what may be the grade or authority of the servant." But the defendant corporation then injected into the case a disturbing element, by raising an issue of fact as to the proper construction of the derrick, and offered evidence to prove that, for the purpose of preventing the bottom of the supporting plank from slipping, it had, in its construction, caused a dozen or more nails or spikes to be driven into, and entirely through, the plank, so that they extended or protruded about one inch beyond its bottom surface. The plaintiff, admitting this, brought proof to show that no nails extended from the bottom of the plank when seen before the accident by the plaintiff's witnesses. The learned trial justice, in his charge to the jury, assumed that this was the only important question of fact to be determined by them, and instructed them as follows, viz.: "The fact upon which your verdict must turn, in regard to the liability of the defendant, is whether, at the time of this accident, the plank upon which this machine stood contained such nails for the prevention of its slipping as reasonable care to prevent that would dictate. There, really, is the point of this case." And, after further instructions in the same line of thought, added: "Were those nails there at the time when the accident occurred, or were they not? As you decide that question, you will decide the case; and if you decide the case upon the understanding that the plaintiff has satisfied your minds that the nails were not there, then your verdict is to be for the plaintiff upon the lines that I have indicated." At the same time the learned judge refused to charge the defendant's fourth and fifth requests. Substantially considered, they embrace the proposition that the jury could find, under the evidence, that, in the handling of the derrick, the deceased assumed an *obvious* risk, for the consequences of which the master was not responsible. While these requests, as made, are not apt in their phraseology in the presentation of this question to the mind of the court, yet we think they

should be held to have been sufficiently specific, and that the express refusal of the court to so charge constituted error. Strictly speaking, this accident did not result from the use of the derrick. It was being straightened into a vertical position, so that it could be used. Until it was placed in its proper position for use it must be evident that the risk of the sudden fall of this top-heavy frame, while being righted, should have been obvious to all ordinarily careful workmen, and, if the risk of its falling was not increased by any structural defect in the machine, the master could not be held responsible for the accident. The court, by its charge (above quoted), confined and narrowed the inquiry of the jury to the solution of a fact which was not conclusive as to the negligence of defendant, and erroneously refused to charge them a principle of law to which the defendant was entitled. "An employe assumes all the risks of his employment against which he may protect himself by ordinary observation and care" is the brief, but plain, rule adopted by this court in the recent case of *Durand* v. *New York and Long Branch Railroad Co.*, 36 *Vroom* 656 (see authorities there cited). No legal duty of the master towards the servant has ever, judicially, been substituted for the exercise of ordinary prudence by the latter. The liability of the master to respond in damages to the servant in cases founded upon accidents of this character has never been so far extended as to dispense with the exercise of ordinary care by the servant to avoid them. The legislature certainly has not as yet, nor have our courts, by judicial construction, enlarged the range of legal responsibility of the master to that of a general insurer of the safety of the servant against accidents happening to him in the performance of his duties. I think the judgment below should be reversed, and a *venire de novo* be awarded.

*For affirmance*—VROOM.    1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES.    11.